## JOSHUA C. SANDERS
### v.
## WALTER L. PECK ET AL.

*Trust Deed—Reformation and Foreclosure—Redemption by Surrender of Bonds—Decision of Supreme Court—Election to Take Less than Entire Relief—Tender—Estoppel—Taxes—Interest.*

1. In a proceeding to foreclose a trust deed, this court holds that the court below, on an order of the Supreme Court remanding the case for further proceedings in conformity with its opinion, wherein it was held that certain lots might be redeemed by the surrender of certain bonds, should have allowed the redemption of a number of lots less than the number involved at the hearing in the Supreme Court, by the delivery of the proper number of bonds for the lots to be thus redeemed.

2. The right of the appellant to enforce a release of any of the lots is based on his offer before filing his cross-bill to deliver to the trustee bonds to the amount of the schedule price of each lot. All the coupons on the bonds when tendered must be surrendered with the bonds now delivered to redeem lots.

3. The court below properly required the cross-complainant to repay all taxes paid on the lots to be redeemed, with interest thereon from the time of payment.

[Opinion filed February 13, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding.

Mr. D. T. CORBIN, for appellant.

When Sanders purchased 301 lots at Riverside of the land company (January 16, 1874), the six trust deeds of the Riverside Improvement Company of August, 1870, to Page & Kimbark, had been (March 12, 1872,) released of record.

They then apparently constituted no incumbrance on said lots; also, when Sanders purchased said lots, the trust deed of the Riverside Water and Gas Works Company of July 1, 1871, to Henry Greenebaum, had been (June 7, 1873,) released of record; and it apparently constituted no incumbrance upon any

of Sanders' lots. In view of these facts, and believing he could obtain clear title to his lots, Sanders offered (June, 1874,) to redeem them from the Jewett mortgage—in other words, offered to pay off with his railroad bonds the Jewett mortgage upon all of his lots. It has turned out that the court, in its wisdom, has since determined that the releases of the Page & Kimbark trust deeds, and the release of the Greenebaum trust deed, were made in fraud of the rights of the holders of the bonds secured thereby, and so has set them aside, and restored the released trust deeds. Thus it appears that Sanders is one of the first victims anticipated by the Supreme Court in Land Co. v. Peck, 11 Ill. 443, where it says: "It is very true that those subsequently acquiring interest in the property were liable to be misled, and take the premises to be unincumbered by these trust deeds, from these releases appearing upon record." The extent of the injury to Sanders by the restoration of said trust deeds is that seventy-five of the lots covered by the Page & Kimbark trust deeds (valued in the aggregate in the schedule at $40,500) are lost to him, and that 163, covered by the Greenebaum trust deed, are also decreed to be sold, so far as necessary, to satisfy the claim of Elizabeth S. Newton.

Of these 163 lots covered by the Greenebaum trust deed, forty-six (or forty-eight) are also covered by the Page & Kimbark trust deeds, so that but 117 (or 115) will be for sale under the Gookins-Newton decree, the others being absorbed under the Hukill et al. decree. These 115 lots at their schedule value, in the aggregate, amount to $79,800.

Thus, by the last decrees entered (July 16, 1888,) in this cause, 190 of Sanders' lots (about two-thirds of them), valued in the mortgage schedule, in the aggregate ($40,500 plus $79,800), at $120,300, are decreed to be sold away from him to satisfy these restored incumbrances.

Now, it would seem a self-evident proposition that it is wholly optional with the owner of real estate, purchased with an incumbrance upon it placed there by others, whether he shall pay it off or permit the property to be sold to satisfy it.

He owes no contract duty in regard to it to anybody, and the party holding the incumbrance is bound to be content · with the security which his mortgage gives.

In this case the mortgagee (Jewett, or his beneficiary bond-holders,) is in no position to insist that Sanders shall pay off this mortgage upon any of his lots, particularly the seventy-five Page & Kimbark lots, and the 115 other Greenebaum lots, as those lots, if not redeemed, will of course remain sub-ject to the Jewett mortgage (so far as that remains) and so will increase the security.

But the fact of facts (these prior incumbrances) that makes Sanders' right of redemption of no value to him, makes these lots of no value to Jewett and the other bondholders. Said lots are simply cut out of the Jewett trust deed, just as they are out of Sanders' deeds, and all who predicate their rights upon that instrument, or any other conveyance of the land company, must lose them—have lost them already. As to these lots, all are alike losers, except that Sanders' loss is great-est of all, because he paid, when he believed the lots unin-cumbered, a large sum ($30,000) to the land company for the equity of redemption.

There being, hence, as plainly appears, nothing in these much mortgaged lots for any holder of railroad bonds, it will be observed, with some surprise, that Peck et al., who stoutly resisted to the Supreme Court, Sanders' right to redeem them, are here now insisting, with all their former vigor, that he shall redeem each and all of them. Their position in this regard has changed significantly since these incumbrances have been restored.

After the decision upon said releases, and that said lots were to be sold and taken from him, Sanders, first before the master, and then before the Circuit Court, insisted that, though he had offered to redeem his 301 lots from the Jewett trust deed, he could not now do so, as such redemption would not only not give him clear title to the lots, but instead, he was, by said decision, to lose a very large number of them (75 plus 115), and he would only redeem such as he could hold as against these prior restored incumbrances.

Sanders v. Peck.

The master hesitatingly ruled that Sanders must redeem all his lots from the Jewett trust deed, according to his tender. His report was excepted to in this regard by Sanders, but the Circuit Court confirmed it, and decreed accordingly.

The bonds tendered were not accepted and canceled, and they still remain the property and in the possession of Sanders. As between Sanders and Jewett, trustee, the Supreme Court has simply settled Sanders' rights, viz.: " That the provision of the trust deed was express; that upon receiving the schedule price of any lot, in bonds, the trustee should release the lot from the trust deed." That " the relief asked by Sanders should have been granted to him upon the surrender of his bonds."

From this it appears that Sanders' right (heretofore denied) to redeem each of his lots at the schedule price in bonds, was established. It further appears that this right pertains to each lot individually, and not to his (301) lots collectively. It it therefore impossible to consolidate these distinct and independent rights in legal contemplation, springing as they do from the terms of the mortgage, which recognizes each lot as a unit and fixes its redeemable value, but they must be regarded in law, as they are in fact, separate and distinct. The pieces or parcels of land are separate, are appraised in the schedule at different values, are separately defined, and lie scattered throughout the various blocks and divisions of Riverside.

It follows that one lot may be redeemed by Sanders without any reference to the redemption of any other lot. In short, the failure or refusal to redeem one lot can not impair the right to redeem any other lot, and the redemption of one lot creates no obligation to redeem any other lot.

Had Jewett accepted the bonds when tendered, and canceled them, this would of course have been the end of both bonds and coupons, and the trust deed, as to Sanders' lots, would have been released, and he put in possession of his property. But all this failed because Jewett refused to accept the bonds and release the lots. Sanders, per force, kept his bonds, and Jewett held on to his mortgage, and the possession of the

property remained with the land company and subsequently with the receiver. Now years have passed, and the coupons not being paid, as they should have been by the railroad company as they fell due, have accumulated—have accumulated in the hands of Sanders as an incident or increment of the bonds. Are the bonds Sanders'? If yes,. then so are the coupons. The coupons represent simply an accumulation of interest upon the bonds, and they are so attached thereto that they may be easily severed therefrom without injury to the bonds, and are intended to be so severed. Each coupon, at maturity, becomes an independent obligation, thenceforth itself drawing interest until paid. It is negotiable, and passes from hand to hand by delivery. Commissioners v. Aspinwall, 21 How. 539; City v. Lamson, 9 Wall. 477; Aurora City v. West, 7 Wall. 82; Thompson v. Perrin, 106 U. S. 589.

The Supreme Court determined that Sanders had a right, at the time he tendered his bonds to Jewett, to redeem therewith each of his lots at the schedule price. As he was not permitted to do it then, the decision means that he may do it now. " The relief asked by Sanders should have been granted him upon the surrender of his bonds," says the court. Hence it follows that the relief asked shall be granted him now, " upon the surrender of his bonds," not the surrender of his coupons. They may, or may not, be attached to the bonds. They may, or may not, even now, be the property of Sanders.

Messrs. PAGE & BOOTH, for appellees.

As early as July, 1886, Sanders was apprised of appellees' claim by their answer to his own petition, as well as by the arguments of counsel in settling the form of the order of reference, and upon that answer and the arguments thereon the order of reference of October 29, 1886, was based.

The master filed his report February 2, 1888, in which he allows the taxes to the Pecks upon the condition that a supplemental bill shall be filed.

To this portion of the report the Pecks excepted, averring that they were " entitled to such relief upon the pleadings as they now stand."

Either the master overlooked the amended answer of the Pecks to Sanders' petition, or is in error in not treating the amended answer as a sufficient pleading to entitle the Pecks to the relief asked.

No formal pleading is necessary to warrant the court in decreeing the taxes to a mortgagee who has paid them in protection of his security, provided there is something to bring the matter into the record.   Wright v. Langley, 36 Ill. 383.
ᵒ The second objection to the decree raised by appellant is "that he was not permitted to redeem from the lien and operation of the Jewett trust deed of March 1, 1873, such of his 301 lots at Riverside as he chose to redeem."

Our reply is that, after fourteen years of litigation, in which this case has already been to the Appellate Court once and to the Supreme Court twice, this is the first time any such claim has ever been made, or even hinted at.

Turning to his cross-bill, we find that, having tendered 195 bonds he "prays decree that Jewett release his 300 lots."

With this prayer of Sanders before it, the Supreme Court say, on page 457:  "We are of opinion the relief asked by Sanders should have been granted  to him upon surrender of his bonds."   112 Ill. 457.

This novel claim, now for the first time set up by appellant, finds no basis in the pleadings.   He has never tendered the issue before, and upon every principle pertaining to the quieting of litigation, if it could have been raised before it should not be permitted to be raised now.

"Where a case has been heard in the Circuit Court, reviewed by the Supreme Court, and remanded with directions as to the decree that shall be entered, a party can not, on a subsequent appeal, assign for error any cause that accrued prior to the decision of the Supreme Court.   It will be presumed, where a case has been determined in the Supreme Court upon its merits, and the errors assigned, that the appellant or plaintiff in error has no further objections to urge against the records and that if any errors exist which are not so assigned, they are waived, and he will not be permitted to have his case heard partly at one time and the residue at another."   Hook v.

Richeson, 115 Ill. 445; Walker v. Doane, 108 Id. 236; Washburn & Moen Mfg. Co. v. Wire Fence Co., 119 Ill. 30; Mix v. People, 122 Ill. 641; Ogden v. Larrabee, 70 Ill. 510; Kingsbury v. Buckner, 70 Ill. 514.

That the strife may cease, and that the rights of the appellees may be at last defined, we feel fully justified in asking this court to hold Sanders to his original tender.

The third objection raised by counsel to the decree is that he is not allowed in his now proposed redemption to add to the face of the bonds the accrued due coupons.

It would seem to be a correct conclusion to what has preceded, that Sanders either did or did not, in May or June, 1874, tender his bonds as they then were, and demand a release of his lots. If he did not, then all the 301 lots belong in the Jewett trust deed, and appellees have a right to sell them. If he did make such tender, he must keep the tender good, and all acts based thereon must be treated as having been done at the time of the tender. He can not vary its form or character; he can not expand or contract it; he can not add to or take away from it without losing the benefit of it. If this principle of law be correct, and we think it is supported by ample authority, it follows that the bonds, as tendered in 1874 in exchange for lots, are to be treated as canceled as of that date, and, the principal bond being canceled, the coupons not due must necessarily follow the fate of the bond. Aulger v. Clay, 109 Ill. 487; Crain v. McGoon, 86 Ill. 434.

Messrs. J. L. HIGH and D. S. WEGG, for the Chicago & Great Western R. R. Co.

When a decree is reversed by the Supreme Court, with directions to modify it in the respects indicated, or to enter a decree in conformity with the opinion of that court, it only remains for the court below to make such modifications, and it is powerless to enter into a general investigation of other matters not embraced in the mandate and opinion. The court below has, in such case, but one duty to perform, viz.: to enter a decree in accordance with the directions of the Supreme

Court.   Ogden v. Bowen, 4 Scam. 301; Boggs v. Willard, 70 Ill. 315; Wadhams v. Gay, 83 Ill. 250; Hough v. Harvey, 84 Ill. 308; Manufacturing Company v. Wire Fence Company, 119 Ill. 30; Mix v. People, 122 Ill. 641.

The judgment of the Supreme Court on the former appeal, Chicago & Great Western Railroad Land Company v. Peck, 112 Ill. 408, is *res judicata* upon all matters in controversy, except the specific points on which the Supreme Court directed a modification of the original decree.   All parts of that decree not expressly reversed or modified are affirmed, and the doctrines of *res judicata* extends not only to issues actually tendered in the former controversy, but to all such as might have been tendered or litigated by the parties.   Cook v. Norton, 61 Ill. 285; Hough v. Harvey, 84 Ill. 308; Smith v. Brittenham, 94 Ill. 624; Newberry v. Blatchford, 106 Ill. 584; Bennitt v. Wilmington Star Mining Company, 119 Ill. 9; Manufacturing Company v. Wire Fence Company, 119 Ill. 30; Henderson v. Henderson, 3 Hare, 100; Wells on *Res Judicata*, 217; Freeman on Judgments, Sec. 249.

And the decree of the Circuit Court of LaSalle county, in the case of Cameron v. Chicago and Great Western Railroad Company, affirmed by the Supreme Court in City of Chicago v. Cameron, 120 Ill. 447, finding that Sanders received his 195 bonds with full knowledge of their want of consideration, and declaring them to be *ultra vires*, fraudulent and void as against the railroad company, is conclusive upon Sanders, who was served by publication, more than three years having elapsed since that decree, and he having taken no steps to open the decree or set it aside.   Revised Statutes of Illinois, chapter 22, "Chancery," section 19.

The decree requiring Sanders to surrender his 195 bonds to Jewett, with all the coupons attached, in the condition in which they were at the date of the original tender, June 1, 1874, was not erroneous.   The tender was made by Sanders as an entirety, and it was his duty at all times to keep his tender good.   The tender being of chattels and not of money, it operated *eo instanti* as a transfer of the bonds, with all their incidents, to Jewett as trustee, the title to the bonds and

coupons thereby vesting in him as of June 1, 1874, and the lien of the trust deed, as to the Sanders lots, being in legal contemplation released as of that date. Parsons on Contracts, 6th edition, 654-5; 2 Kent's Commentaries, 509; Revised Statutes of Illinois, chapter 135, "Tender," section 2; Stow v. Russell, 36 Ill. 18; Thayer v. Meeker, 86 Ill. 470; Aulger v. Clay, 109 Ill. 487; Lamb v. Lathrop, 13 Wend. 95; Rix v. Strong, 1 Root (Conn.), 55; Smith v. Loomis, 7 Conn. 110; Curtis v. Greenbanks, 24 Vt. 536.

MORAN, J. This suit was commenced October 9, 1874, by appellees filing a bill to reform and foreclose a trust deed which has been known in the litigation as the Jewett trust deed, and which was made to secure certain bonds therein described of the amount of $1,000,000, of the first $100,000 preferred of which, appellees were owners. To that bill appellant was made a defendant, and after answering, filed his cross-bill, and cross-bills were filed by various other defendants, some of which set up and asserted mortgage liens on the property covered by the Jewett trust deed prior to the lien of said trust deed. Besides the Peck bill, three other original bills were filed by parties claiming rights and interests in the property, and in all, eight cross-bills were filed by defendants to these original bills, seeking on various grounds to obtain affirmative relief.

By agreement of all the parties, all these cases on the bills and cross-bills were heard together, with the understanding that the testimony taken at the hearing should, so far as applicable, be considered in each case. The litigation progressed to a decree in the Circuit Court, which decree, after being affirmed in this court, was reversed by the Supreme Court, and the case remanded to the Circuit Court for further proceedings in conformity with the opinion of the Supreme Court.

The issues under the various pleadings, and the facts as they appeared in the record as then made up, are fully stated in the report of the case in the Supreme Court, found in the 112 Ill. 408. This appeal brings up for review the decree entered by the Circuit Court, in pursuance of the remanding

order.   Between the date of the filing of the bill by appellees and the redocketing of the case in the Circuit Court under said remanding order, something about fourteen years had elapsed, and it was claimed by appellants that certain changes had taken place in the condition of the parties and of the property, and certain circumstances had arisen since the filing of the bill which were proper to be considered, and various errors are now assigned upon the action of the court in not allowing a supplemental answer and cross-bill to be filed by appellant, as well as error in overruling certain exceptions of appellant to the master's report, and in failing and refusing to grant to appellant the relief to which he is entitled under the pleadings and evidence in the case.

Appellant was the owner, before the filing of the original bill, of 301 lots of land at Riverside, all of which lots were subject to the lien of the Jewett trust deed.   He was also the holder of 195 bonds of the Great Western Railroad Company, which he contended he was entitled to surrender to Jewett, the trustee, in redemption of his lots from the lien of the Jewett trust deed, according to a certain schedule of prices agreed upon and fixed by the parties to said trust deed.

In June, 1874, before the filing of the original bill, he tendered to said Jewett his said bonds, which were sufficient in amount to release his said lots from said trust deed, and demanded a release of the same; but said Jewett refused to release them, and appellant in his cross-bill claimed that he was entitled to have said lots released and prayed that the court decree him that relief.

The Supreme Court decided, reversing the decree of the Circuit Court in that as well as other respects, that the appellant was entitled, by the plain terms of the deed of trust, to the release which he demanded.

At the time appellant offered the bonds to and demanded the release of his lots from Jewett, he supposed that said lots were subject to the lien of said Jewett trust deed only; but by the same decision, in which his right to have his lots released was upheld by the Supreme Court, it was determined that there were other liens prior in right to the said trust deed,

and which cover a considerable number of his lots, to the extent of the probable value of such lots.

On the hearing in the court below, at the entering of the decree appealed from, appellant insisted that he was not bound to surrender all of his said 195 bonds, and take a release from said trust deed of all his 301 lots, but that he had the right to redeem such of said lots as he might elect by surrendering bonds to the amount required by the schedule for such lots as he selected, and asked that it should be so decreed. But the court refused to so order, and, on the contrary, adjudged that he must release the 301 lots if he released any, and he could release none unless he released all, and gave him permission in the decree to release the 301 lots by the surrendering of the 195 bonds.

This portion of the decree is sought to be sustained on the ground that appellant tendered to the trustee in the first place 195 bonds and demanded the release of his said 301 lots, and that in his cross-bill he specifically prayed that the trustee should be compelled to release his said 301 lots on the surrender of these particular 195 bonds, and that it was upon this entire tender of all his bonds to release all his lots that the Supreme Court decided that he was entitled to a release, and to allow him to surrender any less than the 195 bonds and obtain a release of a less number than 301 lots, would be to disobey the order of the Supreme Court remanding the case "for further proceedings in conformity with its opinion." We can not concur in this view. The provision in the Jewett trust deed relating to the release of the lots is as follows: "The trustee shall, on receiving schedule price of any lot or lots in cash or notes secured by mortgage thereon, or in railroad bonds at par, numbered from 1 to 1,000, both inclusive, release said lot or lots."

It appears from the opinion of the Supreme Court that the ground on which the release of appellant's lots was refused was that he had obtained the deeds to his lots by fraud, and the Circuit Court set the deeds aside. This finding the Supreme Court held erroneous, saying: "The provisions of the trust deed were express, that upon receiving the schedule

price of any lot in bonds, the trustee should release the lot
from the trust deed.   We find no sufficient evidence that the
deeds to Sanders were obtained by fraud; and as holder of
bonds to the amount of the schedule price of his lots, which
he tendered, by the plain terms of the deed of trust he would
seem to be entitled to the release which he demanded." It
is obvious that the question which the Supreme Court con-
sidered and determined was that Sanders was a *bona fide*
owner of the lots and of the bonds, and therefore entitled, on
paying schedule price of any or all of his lots in bonds, to
have such lots or lot released; and not that, having offered the
schedule price of the 301 lots in 195 bonds at one time, he
must have just that number of lots released, and surrender just
that number and amount of bonds.   The point was not at all
as to the number of lots or as to the amount of bonds, but as
to his right to have each of the lots released on surrendering
to the trustee bonds to the amount of the schedule price of
such lot.   The question is not different from what it would
have been if the Circuit Court had originally found that
Sanders was entitled to a release of his lots.   Can it be
seriously contended that, the court having found Sanders en-
titled to all the relief specifically prayed for in his bill, he
could not *ore tenus*, at the bar of the court, elect to take less
than his pleading and proof entitled him to?   The Supreme
Court found him entitled to the full and specific relief prayed
in his bill; but we know of no ruling which would compel him,
when the decree comes to be entered, to take that full relief
or nothing.   No such consequences follow from anything in
the opinion of the Supreme Court, nor is such result made
necessary by the form of appellant's pleading.   His bill con-
tains a general prayer for relief, and his allegations and the
proof entitle him to relief as to one or more of all the lots,
and the specific prayer as to all was no obstacle to his electing
at the bar to take a less number.   Vansant v. Allmon, 23 Ill.
30; Holden v. Holden, 24 Ill. App. 106.

But it is said that without regard to the effect to be given to
the opinion of the Supreme Court on this point, and without
reference to the form of the pleading, and wholly irrespective

thereof, the tender by appellant to Jewett of the 195 bonds vested in him the title, as trustee for the bondholders, and in legal contemplation they became extinguished as of that date. In support of this position, cases are cited by counsel which go to establish the proposition that upon the tender of specific chattels in payment of a debt the debtor is discharged from his contract, and the right in the articles tendered passes to the creditor, and if the debtor thereafter retains possession of the goods, it is as the bailee of the creditor, and at his risk.

The doctrine invoked, and which will be found stated at large in 2 Parsons on Contracts, 653 and 654, cited by counsel, has, in our opinion, no proper application to the case under consideration. It is a rule applicable where the rights of parties to a contract by the terms of which one is bound to deliver to the other specific chattels in payment of a debt, are in question. That is not this case. Sanders has never entered into any contract or assumed any obligation to pay off the mortgage debt or any portion of it in bonds or otherwise. There is no question here as to the performance of contract obligations by Sanders. He has the right, by the terms of the trust deed, to release his lots by the payment of money or railroad bonds, and the latter are not specific chattels in the sense in which the term is used in authorities cited by counsel. The bonds were evidence of indebtedness, like notes payable to bearer, and if enough in amount was tendered to release any one lot, it was the same as the tender of sufficient money to effect the same purpose, and by the tender the title to the particular bonds offered to redeem a lot no more vested in the trustee than would the title to the particular money offered to him for the same purpose. The tender would be kept good by being ready to deliver for the release of such lot at any time, not the particular bond or bonds first offered, but the amount of the schedule price of such lot in bonds of the description and within the number mentioned in the deed of trust. We perceive in the facts of the case no basis whatever for holding that appellant was estopped by tendering the 195 bonds for all the lots, from afterward withholding a portion of the bonds and leaving some of the lots un-

redeemed. The elements of an estoppel are all wanting, and appellant had a *locus pœnitentia* in regard to his tender until an actual delivery of the bonds to the trustee had taken place.

There are, it seems to us, strong equitable grounds for allowing appellant to select for release from the trust deed such lots as he may choose, and we see no justice in requiring him to sacrifice his bonds, whatever may be their value, in releasing the lots which, when so redeemed, are still lost to appellant.

We are, therefore, of opinion that it was error to refuse to allow appellant to release less than the whole number of lots specified in his cross-bill. It is true he did not tender a proper decree, nor did he designate the particular lots which he would redeem.. It was for the court, however, to direct a proper decree, and such a decree would allow him the right to redeem any of the lots, and might fix a time within which he should designate and redeem such as he selected.

Appellant's right to enforce a release of any of the lots, is based upon the fact that before filing his bill he offered to deliver to the trustee bonds to the amount of the schedule price of each lot.

The bonds, as then offered, had attached all the undue interest coupons. Since the tender was made, many of the coupons have become due, and appellant contends that he should be allowed to surrender the bonds after severing from them such coupons. The chancellor held that all the coupons on the bonds when tendered must be surrendered with the bonds now delivered to redeem lots. This ruling was correct. The right will be enforced only upon the thing tendered being delivered in the condition that it was in at the time the election to redeem was exercised, when the tender made the right perfect. The coupons that were attached to the bonds when they were offered must go with the bonds now, when the court compels the acceptance of the offer. We think the release of such lots as Sanders may elect to redeem should be, as the court held, upon the condition that he pay to the complainants all taxes which they may have paid on such lots so to be redeemed, with interest thereon from the time the

same were paid; and as the redemption is allowed on Sanders' cross-bill, no pleading on the part of complainants is necessary to support the decree for such taxes.

We do not deem it necessary to discuss other errors assigned and urged upon our attention in the brief of counsel, further than to say that except in the matters which we have heretofore in this opinion pointed out, we deem the decree appealed from to be in strict conformity with the opinion of the Supreme Court, and that all orders of the court with regard to allowing or refusing amendments to the pleadings, or the filing of additional pleadings, were free from error. We have not thought it incumbent upon us in disposing of the appeal in this court, to go into a statement of the facts in this voluminous record.

The rights of all the parties in interest are fully stated in the report of the case in the Supreme Court, 112 Ill. 408.

So much of the decree of the Circuit Court as directs that upon the delivery to said Jewett by said Sanders of the 195 bonds of the C. & Gt. W. R. R. Co., said 301 lots shall be released from the lien of said Jewett trust deed will be reversed, and said decree will in all other respects be affirmed and the case will be remanded to the Circuit Court, with direction to decree that upon said Sanders within ninety days surrendering to said Jewett or the master C. & Gt. W. R. R. Co. bonds with coupons to the amount of the schedule prices of such of said 301 lots as he, said Sanders, shall, at the time of making such surrender, designate or specify, then said Jewett, or in case he refuses, the master, shall receive said bonds with coupons so surrendered, and cancel the same, and release to said Sanders, upon his also paying $2,212.01, taxes and interest thereon to complainants, the lots which may by him be designated or selected from the 301 lots; and in case said Sanders fails to select lots and surrender bonds therefor and refund said taxes within ninety days from the entering of such decree, then his cross-bill shall be dismissed.

*Reversed in part and affirmed in part.*